Collin J. Burt
5205 E 26th Ave. #6
Anchorage Alaska, 99508
907-952-5311
collinjamal24@yahoo.com
Pro Se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| COLLIN J. BURT | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| AT&T and Eleazar Torino, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No.: 3:17-cv-_____

## COMPLAINT & DEMAND FOR JURY TRIAL

### (42 U.S.C. §2000e-2)

COMES NOW Plaintiff Collin J. Burt, and alleges and complains as follows:

### JURISDICTION

1. This Court has jurisdiction of the matter under the doctrine of federal question and specific grant of federal jurisdiction: 8 U.S.C. §1331 29 U.S.C. §187 and FRCP 8(a)(1).

2. This Court has jurisdiction of the tort claims under Federal Supplemental Jurisdiction: 28 U.S.C. §1367.

## VENUE

3. Venue with this Court is proper under 28 U.S.C. §1391(e).

## FACTS COMMON TO ALL CLAIMS

4. Mr. Burt's race is African American.

5. On or around September 18th, 2014, AT&T hired Mr. Burt as a full time employee. Mr. Burt was a full time employee until termination on or around December 7th, 2016.

6. AT&T is a national company registered to do business in the State of Alaska.

7. Communication Workers of America ("CWA") is a union organization operating in the State of Alaska. Covered by Collective Bargaining Agreement ("CBA") Mr. Burt paid dues to the Union. Communication Workers of America claimed to have represented Mr. Burt in the grievance process.

8. Eleazar Torino is a resident of the State of Alaska in Anchorage. Mr. Tornino's race is Filipino. Mr. Tornio is employed as a Retail Store Manager of AT&T. He was acting in such capacity at all times discussed.

9. Kenneth Meyer is a resident of the State of Alaska in Anchorage. Kenneth Meyer's race is Caucasian. Kenneth Meyer is employed as a retail sales consultant of AT&T. He was acting in such capacity at all times discussed.

10. Sarah Donnelley is a resident of the State of Alaska in Anchorage. Sarah Donnelley's race is Caucasian. Sarah Donnelley was employed as a retail sales consultant of AT&T. She was acting in such capacity at all times discussed.

11. Mariah Simpkins is a resident of the State of Alaska in Anchorage. Mariah Simpkins's race is Caucasian. Mariah Simpkins was employed as a retail sales Consultant of AT&T. She was acting in such capacity at all times discussed.

12. Frank Barber is a resident of the State of Alaska in Anchorage. Frank Barber's race is Caucasian. Frank Barber was employed a retail sales consultant of AT&T. He was acting in such capacity at all times discussed.

13. Dana Nidoy is a resident of the State of Alaska in Anchorage. Dana Nidoy's race is Filipino. Dana Nidoy is employed as the retail sales consultant of AT&T. She was acting in such capacity at all times discussed.

14. Gaspar Cardona is a resident of the State of Alaska in Anchorage. Gaspar Cardona's race is Hispanic. Gaspar Cardona is employed as a retail sales consultant of AT&T. He was acting in such capacity at all times discussed.

15. Mr. Burt worked in the 5th Avenue Mall of the AT&T store of Anchorage, Alaska.
    Mr. Burt was one of two African American employees at the 5th Avenue Mall Store.

16. On or around July 2015, Gabby Akers transfers to the 5th Avenue Mall AT&T store. Ms. Akers is a Sales Support Representative.

17. On or around December 2015, Mr. Burt returns from vacation. Mr. Burt and Ms. Akers would have lunch together regularly. Eleazar Torino, Store Manager, would not allow Mr. Burt and Ms. Akers to go to lunch together. Torino would claim "store needs" even when there was sufficient coverage for both jobs. Ms. Akers had a different position. Ms. Akers was a Sales Support Representative.

18. On or around January 16, 2016, Eleazar Torino threatened to have either Mr. Burt or Ms. Akers transferred if they continued taking lunch together.

19. On or around May 25th, 2016, a group of employees including a manager go on lunch break. The previous group returns and Mr. Burt tries to go to lunch with Ms. Akers and Dana Nidoy, Mr. Burt is stopped by Assistant Manager Paul Suarez. Mr. Burt explains to Paul that he was excusing himself to lunch. When Mr. Burt returned from lunch Paul Suarez pulls Mr. Burt into a private office. Mr. Burt requests to talk on the sales floor. Paul refuses. Paul told Mr. Burt, privately, that going to lunch meant that Mr. Burt would have go home for the day. That gave Mr. Burt a "point". Mr. Burt contacted his union steward, Earl Fullwood, about being sent home from work with a point

20. On or around June 2016, Mr. Burt would receive warnings from his managers that his customer service was sub-par. Mr. Burt did not understand. AT&T had surveys going to customers and the discipline Mr. Burt received was based on scores. AT&T wants scores of 9 and 10 (1), a survey score of 6 or below would negatively (-1) impact an employee's

target score. Mr. Burt had not been doing anything differently. Mr. Burt's scores were frequently at or above expectation. The 5th Avenue mall store was the only, or one of the only, stores from Alaska that received national recognition for customer service in 2016.

21. On or around July 2016, Paul Suarez was promoted to Store manager of a different store.

22. On or around August 2016, Corey Nelson was promoted to Assistant Store Manager in the 5th Avenue mall AT&T location.

23. On or around September 9th, 2016, Mr. Burt sent an email to Mr. Nelson about difficulties he was having with Ms. Akers. Mr. Burt told Mr. Nelson he was experiencing depression and a transfer might be appropriate. Mr. Burt and Ms. Akers were having a rough patch and Mr. Nelson, a manager, knew about it. Mr. Nelson suggested that Mr. Burt do what is best for his health.

24. On or around September 25th, 2016, Mr. Burt and Ms. Akers got into an argument. Ms. Akers was gossiping about Mr. Burt with Grant Mernard. Mr. Burt asked Gabby Akers to stop and left for lunch. Assistant manager Grant Mernard told Store manager Torino about the argument between Mr. Burt and Gabby Akers. When Mr. Burt returned from lunch Mr. Torino pulled Mr. Burt into the private office to have him watch the video camera. Mr. Torino told Mr. Burt to observe his body language. Mr. Torino said to Mr. Burt "this is not the hood, you need to go home."

25. On or around October 2016, Mr. Burt requests intermittent vacation days so he is only working 3 or 4 days per week for the month of October. Mr. Burt wanted to be out of the office as much as possible.

26. On or around October 7th, 2016, Eleazar Torino makes a comment during a sales meeting. Mr. Torino tells the team to make sales like we are in the "Jungles". Mr. Burt shows Mr. Torino a Wikipedia page of a primarily African American community in inner city Los Angeles called the Jungles. Mr. Burt is from Los Angeles. Mr. Torino looks at the page and does not acknowledge what Mr. Burt shows him. Mr. Burt did not know what Mr. Torino was referring to.

27. On or around October 12th, 2016, Mr. Burt had just begun his shift and wrote 3 sales goals on the break room whiteboard to focus on for the day. Assistant manager Robert Desylva was walking past and instructed Mr. Burt to write two more goals down. Robert Desylva did not give Mr. Burt time to respond to his request as Robert Desylva was having a phone conversation at the time and continued into the inventory room. Mr. Burt did not have any additional goals to write. Robert Desylva pursued Mr. Burt onto the sales floor where Robert Desylva shouted over a separate employee's customer interaction. Robert Desylva still wanted Mr. Burt to write more goals. Robert Desylva pulls Mr. Burt into the private office along with Corey Nelson. Mr. Nelson tells Mr. Burt to write two more goals down. Robert Desylva threatens to send Mr. Burt home with a point. Robert Desylva did not compel any other employees to write additional goals. Mr. Burt was the only African American employee that was an RSC. At that point Mr. Burt says he would call his union steward so the managers backed down. Mr. Burt believed his managers were more concerned with asserting their authority over him than actually focusing on the business needs. Mr. Burt agrees to come up with two more goals but only to appease Robert Desylva. Mr. Burt was still written up.

28. On or around November 7th, 2016, Mr. Burt begins working full 5 day per week schedule again. Mr. Burt was on the sales floor with a customer. AT&T had a program called "sunset". Mr. Nelson approached Mr. Burt during an interaction with a customer. When Mr. Nelson was bored Mr. Burt believes that Mr. Nelson was a bully. Since Mr. Nelson and Mr. Burt were friends, Mr. Burt would deal with it. Mr. Nelson asks Mr. Burt if he is doing the "sunrise program", this distracts Mr. Burt. Mr. Nelson begins to go from the sales floor into the break room with Ms. Akers. Mr. Nelson looks at Mr. Burt and says "It's just me and you Gabby". Mr. Burt believed that Mr. Nelson was trying to mess with his head. Mr. Burt follows Mr. Nelson to the inventory room and the security door accidentally slams which prompts an argument. Mr. Burt turns to leave the argument and Mr. Nelson says "you have issues". Mr. Torino enters the inventory room at that point and nothing was said. Mr. Torino escorts Mr. Burt out of the inventory room into the break room. Mr. Burt punched a wall in the break room. Mr. Torino pulls Mr. Burt into

the private office to ask Mr. Burt what happened in the inventory room. Mr. Burt tells Mr. Torino that Mr. Nelson was being inappropriate with Ms. Akers and Mr. Burt did not like it. Mr. Burt did not want to risk Mr. Nelson's job so Mr. Burt requested a 15 minute break. When Mr. Burt requested that Mr. Nelson would not be present when he returned. When Mr. Burt returned from his 15 minute break, Mr. Nelson was also in the private office. Mr. Torino again asks what happened in the inventory room. Mr. Burt did not want to repeat himself because they had already discussed this 15 minutes ago. Mr. Torino asks Mr. Burt what should be done about the situation, so Mr. Burt requests to be transferred to a different store. Mr. Nelson agrees that a transfer is a good idea for Mr. Burt. Mr. Torino says he can not guarantee a transfer because Mr. Burt was a "problem child". Mr. Torino says he will put Mr. Burt on Vacation time until he can figure out a solution.

29. On or around November 17th, 2016, Mr. Burt is called back to work for an internal investigation. The investigatory interview was done over the phone. Mr. Burt was clocked on for this. Union Steward, Earl Fullwood, was present on the call. Mr. Burt did not have to request representation. The person interviewing Mr. Burt by phone tells Mr. Burt that there were multiple witnesses. The person interviewing Mr. Burt asked him if Mr. Burt believed his actions were appropriate. Mr. Burt did not believe his actions were appropriate but Mr. Burt explains that his actions were the healthiest way to diffuse the moment. The person interviewing Mr. Burt asks him if he had ever had any issues with Mr. Nelson or Ms. Akers in the past and Mr. Burt answers no. The person interviewing Mr. Burt asks him if he will take more appropriate actions in the future, Mr. Burt says yes.

30. On or around November 30th, 2016, Mr. Burt texts Torino asking if he should begin looking for a new job because Mr. Burt had not heard anything at that point. Torino tells Mr. Burt that the decision was not up to him.

31. On or around December 2nd, 2016, Mr. Burt was supposed to be paid. Mr. Burt was not paid.

Burt v. AT&T 3:06-cv- COMPLAINT - 6
Case 3:17-cv-00237-TMB   Document 1   Filed 11/09/17   Page 6 of 20

32. On or around December 5th, 2016, Mr. Burt went into the 5th avenue mall store to pay his phone bill. Mr. Torino approaches Mr. Burt and asked him if he has been in contact with the union. Mr. Burt tells Mr. Torino he had not been in contact with his union. Mr. Torino tells Mr. Burt to come back on Wednesday December 7th for "some form of discipline". Mr. Burt was not clocked in for this.

33. On or around December 7th, 2016, Mr. Burt goes back to work. Mr.Torino is there. Mr. Burt sat at a table on the sales floor. Mr. Torino joins Mr. Burt and asks him if he had any questions before they started. Mr. Burt was unsure of what was going on so he tells Mr. Torino he did not have any questions at that moment. Mr. Torino tells Mr. Burt, based on the severity of what happened on November 7th, 2016, Human Resources and AT&T upper management had decided to "release" Mr. Burt. Mr. Burt asks Mr. Torino if he had an opportunity to speak with representation about this decision. Mr. Torino tells Mr. Burt that it was in fact his right to have representation but if Mr. Burt wanted representation, Mr. Burt would have to meet his steward at a separate location (Dimond Mall). Mr. Burt was in shock. Mr. Burt still needed to use his company issued parking pass to exit from the parking garage. Mr.Torino tells Mr. Burt to exit the garage using the pass and then return the pass. Mr. Torino and Mr. Burt go to exit the store and Mr. Torino says to Mr. Burt "you're not gonna drive-by me right?" Mr. Burt says no and returns the parking pass shortly after.

34. On or around December 13th, 2016, Mr. Burt was getting ready to file for unemployment. Mr. Burt texts Mr. Torino to get a termination letter from AT&T.

35. On or around December 15th, 2016, Torino responds to Mr. Burt by saying that AT&T does not give termination letters. This is not true.

36. On or around December 21st, 2016, unemployment was denied. AT&T internal investigation from November 17th, 2016, was submitted. This violated AT&T code of business conduct. Mr. Torino said he did not witness the events on November 7th, 2016. This was not true. Mr. Torino made it seem like Mr. Burt and Mr. Nelson were fighting in the

Burt v. AT&T 3:06-cv- COMPLAINT - 7
Case 3:17-cv-00237-TMB   Document 1   Filed 11/09/17   Page 7 of 20

inventory room on November 7th, 2016. This was not true. Mr. Nelson said that Mr. Burt's behavior on November 7th, 2016 was because Mr. Burt was jealous of Mr. Nelson's assistant manager position. This was not true. Ms. Akers said she did not know if Mr. Burt was experiencing difficulties outside of work. This was not true. Mr. Burt's appeal for unemployment was filed too late due to a damaged mailbox.

37. On or around January 5th, 2017, Mr. Burt submitted his grievance to CWA local 7803 (Washington).

38. On or around January 13th, 2017, Mr. Burt gets paid direct deposit of more than $200 from AT&T.

39. On or around January 24th, 2017, Mr. Burt calls union steward Earl Fullwood. Mr. Fullwood claims that Mr. Burt should not have waited to call him. Mr. Burt explains to Mr. Fullwood that Mr. Burt did ask for union representation on December 7th, 2016 but Mr. Torino discouraged it.

40. On or around January 27th, 2017, Mr. Burt calls AT&T Payroll department in Human Resources. Mr. Burt speaks to a HR specialist who confirms that Mr. Burt was currently active on payroll. The CBA defines an employee as someone who is active on payroll. Mr. Torino calls Mr. Burt down to the 5th Avenue Mall store to pick up a final paycheck. Mr. Burt explains to Mr. Torino that he had just given him a blank paystub. Mr. Burt asks Mr. Torino who made the decision to terminate his employment and Mr. Torino refused to answer.

41. On or around January 30th, 2017, Mr. Burt calls and reports his termination to AT&T asset protection. Mr. Burt is told he must go through his union.

42. On or around February 10th, 2017, Mr. Burt calls AT&T Human Resources inquiring about termination policies and procedures. A HR specialist explains to Mr. Burt that when an employee is terminated from AT&T that terminated employee will sign and receive an "exit package". Mr. Burt did not receive and exit package. The HR specialist explains to Mr. Burt that a terminated employee also would not be receiving paychecks. Mr. Burt explained to the HR specialist that Mr. Torino simply would not allow Mr. Burt to return to work. The HR specialist told Mr. Burt to contact his union. On or about 3

p.m. Mr. Torino calls Mr. Burt down to the 5th Avenue Mall to pick up another final paycheck. Mr. Burt picks up the blank paystub and Mr. Torino refuses to speak.

43. On or around February 11th, 2017: Collective Bargaining Agreement expires; AT&T had not negotiated a new CBA.

44. On or around February 17th, 2017, Mr. Burt files a second grievance with his union. Mr. Burt requests to be placed at any AT&T location besides the 5th Avenue Mall store.

45. On or around February 22nd, 2017, Union Representative Kimberly Anderson gives Mr. Burt his personnel file from AT&T. AT&T documents everything. Mr. Burt was usually in the top 15-20% of sellers in his region. Mr. Burt receives copies of all of his side-by-side coachings and observation notes from managers. Mr. Burt also receives copies of all trainings he had completed with AT&T. Disciplinary notices are required by the CBA. Mr. Burt did not find a termination letter in his personnel file. Mr. Burt asked Ms. Anderson why there was no termination letter in his personnel file. Ms. Anderson told Mr. Burt that he would have to ask AT&T HR where to find his termination letter.

46. On or around February 24th, 2017, AT&T mails Mr. Burt another blank paystub to his home address. Mr. Burt considers this harassment

47. On or around March 2nd, 2017, Union Representative Darrin Hartman tells Mr. Burt that a grievance meeting took place. Mr. Burt was not given any records of the meeting. Mr. Burt was not invited to the meeting

48. On or around April 19th, 2017, Mr. Burt calls AT&T benefits center to ask about healthcare options. Mr. Burt never received an extended healthcare offer after termination in December 2016. Mr. Burt spoke to several benefits specialists who were continually transferring him and eventually even hanging up on Mr. Burt. One benefits specialist explained to Mr. Burt that his coverage ended on December 31st 2016. Mr. Burt explains that he received a direct deposit from AT&T on January 13th, 2017. One benefit specialist explains that AT&T mailed Mr. Burt a COBRA letter on February 28th, 2017. Mr. Burt never received his COBRA package. Mr. Burt pointed out that sending the

COBRA letter in February may be too late. Mr. Burt spoke to another specialist who offered a deal for $1 per month for a type of counseling.

49. On or around April 24th, 2017, Mr. Burt receives a bill from AT&T benefits center. AT&T had billed Mr. Burt from January 2017 – May 2017 for coverage for counseling services. Mr. Burt did not agree to this. Mr. Burt was seeking full healthcare. Mr. Burt did not pay the bill.

50. On or around April 26th, 2017, Mr. Burt receives a bill from Ascension Recovery Managements. Mr. Burt received a collection notice that would negatively impact his credit rating. AT&T was coming after Mr. Burt for the money Mr. Burt was paid on January 13th, 2017. Mr. Burt sent a dispute letter.

51. On or around May 6th, 2017, Mr. Burt emailed union representative Ken Saether to notify him that AT&T had manually billed me based on discrepancies that Mr. Burt pointed out, regarding COBRA. Ken Saether got the email but was not able to print it.

52. On or around May 8th, 2017, Mr. Burt emailed Ken Saether again with the COBRA attachment. There was a grievance meeting held on between union representative Ken Saether and Thomas Conway (Labor Relations Manager for AT&T). AT&T had decided to uphold the termination and deny the grievance. Mr. Burt was not invited to this meeting.

53. On or around May 12th, 2017, AT&T sent Mr. Burt a final company position letter. This letter was a response to the 3rd step of AT&T's formal grievance process, signed by Thomas Conway. The letter claimed that Mr. Burt demonstrated a "pattern of willful behavior which could not be condoned or permitted in the workplace for the safety of customers and Company employees." On December 21st, 2016, AT&T stated in the unemployment paperwork that no prior incidents were reported.

54. On or around May 20th, 2017, Union members go on strike because no new CBA was agreed to.

55. On or around June 19th, 2017, Mr. Burt filed a claim with the National Labor Relations Board.

56. On or around August 16th, 2017, Mr. Burt filed claim with EEOC for race based harassment, race discrimination, wrongful termination based on race.

57. On or around August 17th, 2017, EEOC issued right to sue letter.

58. On or around September 22nd, 2017, Mr. Burt withdrew his complaint with the National Labor Relations Board.

59. All conditions precedent to filing this action have been met.

## CLAIM I
### VIOLATION OF TITLE VII – DISPARATE TREATMENT IN HIRING AND PROMOTION, COMPENSATION AND TERMS, CONDITIONS AND PRIVILEGES OF EMPLOYMENT: 42 U.S.C. §2000e-2(a)(1) and (c)(1)

60. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

61. Mr. Burt belongs to a class of persons protected by Title VII. Mr. Burt is African American.

62. Mr. Burt performed his job satisfactorily. Mr. Burt made offers to customers based on what he was instructed. Mr. Burt was usually in the top 15-20% of sellers in his region. Mr. Burt's sales were better than other employees kept on staff.

63. Mr. Burt suffered an adverse employment action. Mr. Burt was terminated from job. Eleazar Torino called Mr. Burt into the office and fired him orally. AT&T turned Mr. Burt over to a collection agency thereby ruining Mr. Burt's credit rating.

64. Mr. Burt was treated differently than similarly situated employee who do not belong to the same protected class as Mr. Burt.

65. Sarah Donnelley screamed and cussed at managers on multiple occasions. Ms. Donnelley was not fired.

66. Kenneth Meyer screamed and cussed at managers and customers on multiple occasions. Mr. Meyer was not fired.

67. Gaspar Cardona screamed and cussed at customers on multiple occasions. Mr. Cardona got into a physical altercation with a customer. Mr. Cardona was not fired.

68. Mariah Simpkins nearly got into a physical altercation with a customer. Ms. Simpkins was not fired for this.
69. Frank Barber was terminated from AT&T. AT&T did not turn Mr. Barber over to a collection agency.
70. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T, discriminated against Mr. Burt on the basis of race.

## CLAIM II
### VIOLATION OF TITLE VII – RACIAL HARASSMENT & Hostile Working Environment

71. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.
72. Mr. Burt was treated differently than similarly situated employee who do not belong to the same protected class as Mr. Burt
73. Mr. Burt was sent home from work multiple times for reasons that were not related to business needs. Mr. Burt's managers would only send Caucasian employees home when situations were extreme and was necessary for business needs. Kenneth Meyer was intoxicated during his shift on multiple occasions
74. Mr. Burt applied to be a manager with AT&T several times. Mr. Burt was turned down in favor of lesser qualified employee who were of a different race On or around October 2016, Mr. Burt wanted to be out of the office as much as possible due to the race-based harassment he was experiencing.
75. Eleazar Torino made race based comments to Mr. Burt on multiple occasions. Mr. Burt did not appreciate the comments made by Mr. Torino. Mr. Burt found the statements to be a direct reference to his race and intended to belittle, embarrass and humiliate Mr. Burt, which they did.
76. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T, acted to deprive Mr. Burt of equal rights under the law on account of his race.

## CLAIM III
### VIOLATION OF TITLE VII – Retaliation:

Burt v. AT&T; 3:06-cv- COMPLAINT - 12
Case 3:17-cv-00237-TMB   Document 1   Filed 11/09/17   Page 12 of 20

42 U.S.C. §2000e-3

77. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.
78. Eleazar Torino made race based comments to Mr. Burt on multiple occasions. Mr. Burt did not appreciate the comments made by Torino.
79. Mr. Burt engaged in a protected activity. Mr. Burt was terminated only one month after engaging in a protected activity. There is a direct link between the protected activity and Mr. Burt's adverse employment action.
80. Mr. Burt told AT&T manager Eleazar Torino on or around November 7th, 2016 that Mr. Burt saw Mr. Nelson being inappropriate with Ms. Akers. Mr. Burt was terminated after this incident. Mr. Burt complained of sexual harassment happening to another employee; Mr. Nelson was making sexually suggestive remarks to Ms. Akers.
81. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T committed and/or failed to prevent racial harassment against Mr. Burt.

CLAIM IV

VIOLATION OF CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT:
29 U.S.C. §§1161, 1162, 1163 and 1166

82. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.
83. Mr. Burt was a qualified beneficiary of AT&T's health care plan. Mr. Burt was a full time employee.
84. AT&T has more than 20 employees. AT&T is a national company registered to do business in the state of Alaska.
85. Mr. Burt was terminated from AT&T on or Around December 7th, 2016.
86. Mr. Burt was not provided with a notice of right to continue health care under AT&T's healthcare plan. Mr. Burt was only offered an extremely limited form of health care (counseling only) on or around April 19th, 2017. The terms of this offer were vague and not the same as his health insurance policy under the group health care plan at AT&T.

87. Mr. Burt made multiple attempts to secure his health coverage following termination by contacting AT&T HR employees. AT&T employees actively worked to prevent Mr. Burt from exercising his rights under COBRA. Mr. Burt requests the statutory penalty of $110 per day for the time that AT&T failed to supply the required COBRA information.

88. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T violated Mr. Burt's rights under the Consolidated Omnibus Budget Reconciliation Act.

## CLAIM V
### UNFAIR LABOR PRACTICES: BREACH OF THE COLLECTIVE BARGAINING AGREEMENT AND BREACH OF DUTY TO PROVIDE FAIR REPRESENTATION: 29 U.S.C. §§159 and 185.

89. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

89. Mr. Burt did not receive a termination letter in a timely manner as required by the CBA.

90. Mr. Burt did not receive the hours and pay that he was entitled to per the CBA.

91. Mr. Burt was not paid by AT&T on dates Mr. Burt was supposed to be paid.

92. Mr. Burt's termination was contrary to the CBA. Mr. Burt received multiple paystubs after Mr. Burt was told he was terminated. The CBA defines an employee as someone who is active on payroll.

93. Mr. Burt was not invited to any of the 3 formal grievance meetings. The CBA requires Mr. Burt be invited to participate in the grievance meetings.

94. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T breached the Collective Bargaining Agreement. Communication Workers of America failed to fairly represent Mr. Burt in the process of enforcing the Collective Bargaining Agreement.

## CLAIM VI
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

95. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.
96. Mr. Burt entered into a contract with AT&T as an employee and Communication Workers of America when Mr. Burt agreed to join the union. Mr. Burt paid union dues automatically each month.
97. Mr. Burt did not receive pay that he was entitled to per the CBA.
98. Mr. Burt had to implore his union to pursue his grievance. Mr. Burt pointed out several internal inconsistencies. Mr. Burt pointed out a discrepancy regarding his healthcare options.
99. Kenneth Meyer screamed and cussed at managers and customers; Kenneth Meyer was not terminated. Sarah Donnelley screamed and cussed at managers and other employees on multiple occasions; Sarah Donnelley was not terminated. Gaspar Cardona screamed and cussed at managers on multiple occasions; Gaspar Cardona was not terminated.
100. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T and/or Communication Workers of America breached the covenant of good faith and fair dealing.

## CLAIM VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.
102. Eleazar Torino told Mr. Burt that HR and Upper management decided to terminate his employment. Mr. Burt is told by HR on or around February 10th, 2017 that Mr. was still active as an employee. Mr. Burt had not received a termination letter. When Mr. Burt finally did receive information about his termination, the reason given for the termination was completely false. It was based on an investigation containing numerous false statements against Mr. Burt.

103. Mr. Burt believes that Mr. Torino did not expect Mr. Burt notice the discrepancies regarding his termination.

104. As a result of the conduct demonstrated by Mr. Torino, Mr. Burt is experiencing emotional issues. Mr. Burt did not have health insurance to be able to see a doctor to help deal with his emotional issues. Mr. Burt continually experiences irregular sleep patterns including inability to sleep. Mr. Burt experiences high anxiety along with crying and weight loss. Mr. Burt experiences depression which results in isolation from others.

105. The defendants, acting in their corporate and/or individual capacities and as agents of the AT&T, acted intentionally to inflict emotional damage upon Mr. Burt.

## CLAIM VIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

106. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

107. Mr. Burt, on several occasions contacted AT&T Human Resources about his termination. Mr. Burt also contacted AT&T asset protection.

108. Mr. Burt told Corey Nelson, a manager, that Mr. Burt was experiencing depression. Mr. Nelson suggested a transfer for Mr. Burt. Mr. Burt did not receive information on how to transfer out of his store.

109. AT&T terminated Mr. Burt's employment without following the procedures established by the CBA. The termination was based on lies and false pretenses. AT&T managers knew or should have known that the reasons alleged for the termination were false.

110. Mr. Burt told Corey Nelson and Eleazar Torino exactly what was bothering him at work. Mr. Nelson and Mr. Torino failed to use reasonable care.

111. Mr. Burt's emotional issues were exacerbated as a result of a failure to transfer. Mr. Burt indicated he needed a transfer because he was experiencing depression during

(not as a result of) a rough path with Ms. Akers. Mr. Burt also experienced headaches, weight loss, and an inability to sleep.

112. The defendants had a duty to follow the CBA and prevent emotional harm to Mr. Burt.

113. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T and/or Communication Workers of America failed to act with reasonable care, and in doing so, inflicted emotional damage upon Mr. Burt.

## CLAIM IX
## DEFAMATION

114. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

115. AT&T communicated statements to a 3rd party that was not Mr. Burt. AT&T employees that participated in the investigation which led to Mr. Burt's termination provided false statements to the investigator. These false statements caused Mr. Burt to lose his job.

116. On or around December 21st, 2016 AT&T internal investigation was distributed which violated AT&T code of business conduct.

117. AT&T communicated false statements to a 3rd party and distributed an internal investigation with false statements after Mr. Burt applies for unemployment.

118. Mr. Burt was denied unemployment. Mr. Burt was not able to find a new job until on or around March 2017.

119. AT&T distributed an investigation to 3rd parties that was filled with false statements.

120. The defendants, acting in their corporate and/or individual capacities and as agents AT&T, through false oral and written statements, damaged Mr. Burt.

## CLAIM X
## NEGLIGENT SUPERVISION

121. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

122. Mr. Burt, on several occasions contacted AT&T Human Resources about his termination. Mr. Burt also contacted AT&T asset protection.

123. Mr. Burt told Corey Nelson, an AT&T manager, that Mr. Burt was experiencing depression. AT&T failed to allow Mr. Burt to transfer to another store despite the fact that they knew continuing to work at the 5th Avenue Mall was causing harm to Mr. Burt.

124. Mr. Burt told AT&T manager Eleazar Torino on or around November 7th, 2016 that Mr. Burt saw Mr. Nelson being inappropriate with Ms. Akers. Mr. Burt was terminated after this incident.

125. Kenneth Meyer was intoxicated from alcohol during his shift on multiple occasions. Mr. Meyer was not terminated.

126. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T failed to use reasonable care in managing and supervising their employees, and in doing so, damaged Mr. Burt.

## CLAIM XI
## Weingarten Violation

127. Mr. Burt was called in for internal investigation on or around November 17th, 2016.

128. Mr. Burt was called into his work store on or around December 7th, 2016 for "some type of discipline."

129. Mr. Burt requests Representation on or around December 7th, 2016. Mr. Burt was not granted representation.

## CLAIM XII
## PUNITIVE DAMAGES

130. Each of the preceding paragraphs is realleged in its entirety as if fully restated here.

131. The defendants, acting in their corporate and/or individual capacities and as agents of AT&T and/or Communication Workers of America acted maliciously against Mr. Burt and/or in conscious disregard of his rights.

## DEMAND FOR TRIAL BY JURY

Burt v. AT&T 3:06-cv-237-TMB
Case 3:17-cv-00237-TMB   Document 1   Filed 11/09/17   Page 18 of 20
COMPLAINT - 18

Mr. Burt requests a jury trial on all issues so triable.

REQUEST FOR RELIEF

Mr. Burt requests the following relief:

A. For an injunction and equitable relief authorized under 42 U.S.C. § 2000e-5(g).

B. For an award of economic damages authorized under 42 U.S.C. § 2000e-5(g) in an amount to be proven at trial.

C. For an award of compensatory damages against the defendants in an amount to be proven at trial.

D. An award of statutory damages pursuant to 29 U.S.C. 1132(c)(1); 29 C.F.R. 2575.502c-3.

E. For an award of punitive damages in an amount to be proven at trial.

F. For a final judgment in favor of Mr. Burt which (i) declares him the prevailing party on each of his claims, (ii) grants him leave to move for the maximum amount of attorney's fees and costs available under the law, and (iii) grants him the maximum amount of pre-judgment and post-judgment interest allowable by law; and

G. For a final judgment that provides Mr. Burt with any other relief as may be just and proper under the circumstances.

Respectfully submitted this 9th day of November, 2017.

Collin J. Burt
Pro Se
5205 E 26th Ave #6
Anchorage, Alaska, 99508
907-952-5311

collinjamal24@yahoo.com